# Wytheville.

## H. E. HOGAN AND I. S. PRICHARD, PARTNERS, TRADING AS HOGAN & PRICHARD, v. E. M. CALLAS AND GUST GERIS.

### June 12, 1924.

1. LANDLORD AND TENANT—*Reduction of Rent—Construction of Lease in Correspondence for Court.*—On distress for rent, defendants contended that the landlords had consented to a reduction of the rent.

   *Held:* That it was for the court to construe the correspondence between the parties to the lease in order to determine whether the stipulated rent had been reduced by consent of the parties.

2. LANDLORD AND TENANT—*Rent—Whether Landlords had Consented to a Reduction of Rent—Case at Bar.*—In the instant case it was apparent that the tenants were seeking, not an extension of credit, but a reduction of rent, and it was also apparent that the landlords were reluctant to accede thereto. The landlords wrote that they were willing to accept $30.00 per month for ninety days, and give the tenants credit therefor, and although in the same letter they said that they had no idea of relinquishing their rights under the lease, yet, when this was considered in connection with other contemporaneous expressions, and under the facts of the case, it was held that the $30.00 per month was intended to be a substitute for the monthly settlements provided for that period in the lease.

3. LANDLORD AND TENANT—*Reduction of Rent—Construction of Landlord's Lease.*—Letters of a landlord in response to the specific request of the tenants for a reduction of rent should be construed most strongly against the landlord on the question of whether the landlord's offer to accept a less sum per month for a certain period of the lease was an offer to accept a reduction of rent, or an offer to accept the sum as a credit upon the rent.

4. LANDLORD AND TENANT—*Agency—Reduction of Rent.*—Where an agent of a landlord is authorized by the landlord to accept from the tenant a less sum per month than that stipulated for by the lease for the period of three months, he is not authorized to accept such sum after the expiration of that period, and the tenants having actual notice of the agent's authority are charged with the consequences thereof.

5. LANDLORD AND TENANT—*Reduction of Rent—Burden of Proof—Less Rent Accepted by Landlord—Case at Bar.*—Where tenants are obligated to pay a certain sum per month, during a certain period, under a sealed contract of lease, they can only be excused from its performance by showing that smaller amounts were "expressly accepted by the owners in satisfaction and received in pursuance of an agreement for that purpose." This, indeed, is only permissible under Code of 1919, section 5765, which relaxes the common law rule which holds such agreements invalid as without consideration. Tenants can be relieved from their obligation only by showing such express waiver by the owners, and the burden of proof is on them, and the inference growing out of the silent acceptance of a smaller sum is not sufficient under the statute.

Error to a judgment of the Corporation Court of the city of Hopewell, in an action of distress. Judgment for defendants. Plaintiffs assign error.

*Reversed and remanded.*

The opinion states the case.

*Plummer, Zimmer, Bohannan & Syme,* for the plaintiffs in error.

*A. L. Jones* and *J. Toomer Garrow,* for the defendants in error.

PRENTIS, J., delivered the opinion of the court.

Hogan and Prichard, the owners of certain realty in Hopewell, sued out a distress warrant against the defendants, who were their tenants. The respective rights of the parties were originally fixed by a contract of lease for two years, ending August 31, 1922, under seal and in the usual form. The rent reserved was $30.00 per month for the first six months, ending February 28, 1921; for the second six months, March to August, 1921,

inclusive, $65.00 per month; and for the residue of the term, twelve months, to August 31, 1922, $75.00 per month.

The rent was paid each month for the first period of six months at the agreed rate, and one month, March, 1921, at the rate fixed for the second period, $65.00 per month.    Then on April 21, 1921, the owners wrote to the tenants in reply to their letter asking for a reduction in the rent, using this language:   "Will state that we will accept $30.00 per month for the next ninety days, giving you a credit on account for same.   We have no idea of relinquishing our rights to the lease, but merely do this in order to tide over the temporary dull times.   Remit us a check at once for $30.00 and we will give you credit for same.   Please let us hear from you by return mail."

There seems to have been no reply to this letter, but the owners, acting through R. Sidney King, attorney, of Roanoke, wrote to Thomas J. Blankenship, attorney, of Hopewell, reciting certain facts with reference to the lease, and then using this language:   "It seems that the tenants, Callas and Geris, have not paid any rent for April or May.   They claim that Hopewell has gone to the dogs and they are not able to pay over $30.00 per month.   Hogan and Prichard made them a proposition to accept $30.00 per month for the next ninety days, including April and this month, thereby giving Callas and Geris a chance to get on their feet; this proposition was made, however, without waiving any rights under the lease.   They have been unable as yet to obtain any satisfaction from these people, and if you are in a position to handle it, I wish you would take the matter up with Callas and Geris and see what can be done.   If they do not pay the rent promptly the owners would like to have any property which Callas and Geris have attached."

Acting under the authority of this letter, which was shown to the tenants, Blankenship collected the rent for April and May, and deducting his commission, remitted therefor. In his letter of remittance to King, May 31st, he said they promised to pay the other $30.00 for June "sometime this week. They also state that they are unable to pay more than $30.00 per month from now on unless conditions improve. I am frank to state that conditions here are not very satisfactory, although the rent on these premises at $30.00 per month is very reasonable, which amount they state they are willing to pay regularly until conditions improve. They will no doubt write you about this. If clients should desire me to continue to collect rent on these premises after July 1st, my charges will only be five per cent—but if the rent gets in arrears I am bound to charge a minimum C. L. L. of A. rates which I trust is satisfactory."

To this letter, on June 3rd, Hogan and Prichard, the owners, replied, acknowledging receipt of check and saying: "We wish to thank you for same and for your attention in the matter. We trust that our tenants will be able to fill their rental contract in the near future at $65.00 per month. I suppose Mr. King has explained to you that we agreed to accept from our clients, Callas and Geris, $30.00 for three months only, which is to be credited on their account. We judge that from your letter that the tenants, owing to lack of business, are unable to pay $65.00. If such is the case in your judgment, we are willing to extend the $30.00 per month proposition for three months longer, provided, however, they pay the rent promptly in advance. If they fail to do so, you are authorized by us to proceed at once to attach the goods and collect the rent. We feel like this is quite a sacrifice on our part to meet these men half-way, and we shall demand of them this courtesy due us.

Trusting that we may receive a check for the balance due us by return mail," etc.

Following these letters, Blankenship continued to collect $30.00 per month, not only for the limited period as authorized, but thereafter up to and including the rent for the month of March, 1922. One of the owners suspecting, as he testifies, that the lessees were imposing upon them by not paying more, came to Hopewell, visited the leased premises, and made an investigation. He then placed the matter of collection of the rent in the hands of other attorneys. These attorneys claiming that the $30.00 per month which had been collected had been received as partial payments on the amount of the rent specified in the lease, demanded the balance, and the demand not being satisfied, a distress warrant was sued out covering the rent up to April 30, 1922. The tenants insisted that the rent had been legally reduced from the amount fixed by the lease contract, and that there was no balance then accrued thereon.

The case being submitted to a jury, there was a verdict in favor of the tenants, and the owners are here assigning a number of reversible errors.

In our view of the case, it is only necessary for us to consider the refusal of the court to set aside the verdict and either grant a new trial, or enter judgment for the owners. It is necessary, then, to construe these letters as supplemented by the parol evidence, in order to determine the rights of the litigants.

[1] There is little of consequence which requires attention except the lease and the correspondence, and these should have been construed by the court.

[2, 3] That the tenants were seeking, not an extension of credit, but a reduction of their current rent, is apparent. That the owners were reluctant to accede

thereto is equally apparent. This rent was payable each month, and the lease contemplated final monthly settlements, so that when the owners wrote, on April 21, that they were willing to accept $30.00 per month for ninety days, and give the tenants credit therefor, our judgment is that it should be construed as intended to be a substitute for the monthly settlements provided for that period in the lease. While it is true that in the same letter they said: "We have no idea of relinquishing our rights to the lease, but merely do this in order to tide over the temporary dull times;" nevertheless it is also true that when they agreed to receive $30.00 per month they were in fact actually relinquishing their right under the lease to collect $65.00 per month during that period. The two expressions in the letter are inconsistent, but considered in connection with their other cotemporaneous expressions, and under the facts of this case, should be construed most strongly against the owners, who used them in response to the specific request of the tenants, and held to mean that while they did not relinquish any other rights under their contract, they did specifically relinquish the right to collect the full amounts due for each month during the specified period. This view is greatly strengthened by their letter of June 3rd, addressed to Blankenship, in response to his of May 31st, addressed to their Roanoke attorney, King, in which they expressed the hope that the tenants "will be able to fill their rental contract in the near future at $65.00 per month." This language is certainly suggestive of the construction which we have already indicated. In this letter also they say that they judge from his letter that the tenants, owing to the lack of business, are unable to pay $65.00, and that if that is the case in his (Blankenship's) judgment, they were

willing to continue the $30.00 per month proposition for three months longer, provided they paid the rent promptly in advance; and that they feel that this is quite a sacrifice on their part to meet their tenants halfway. There is good reason for a fair difference of opinion as to the proper construction of these expressions, but the burden is upon the court to construe them according to one or the other of these contentions. Giving these letters full and fair consideration, our conclusion is that they should be construed against the contention of the owners, and that by them they empowered their agent, Blankenship, to accept in satisfaction of their claims, rent due under that lease at the rate of $30.00 per month for six months from April to September, inclusive.

[4, 5] Blankenship, however, although his authority as agent was so clearly limited, continued to accept rent at $30.00 per month, and to remit to the owners for six months following, from October, 1921, to March, 1922, believing, as he said, that he had authority to do so.

We cannot accede to this view. His authority as agent was fully expressed in these letters, the tenants had actual notice of their contents and must be charged with the consequences thereof. Their obligation to pay $75.00 per month during the period last referred to is clear under the sealed contract of lease and they can only be excused from its performance by showing that the smaller amounts were "expressly accepted by the owners in satisfaction, and received in pursuance of an agreement for that purpose." Code, section 5765. This, indeed, is only permissible because of this statute, which relaxes the common law rule. They can be relieved from their obligation only by showing such express waiver by the owners.

Of course, this statute imposes upon the tenants the burden of showing such waiver by the owners of their rights under the contract, which otherwise would be held invalid as without consideration by the inexorable common law rule.   Burks' Pl. & Pr. (2d ed.) 417.   The tenants have failed to sustain this burden.   What they have shown is that for the first six months of the period during which they paid $30.00 a month to Blankenship, he had authority from the owners to collect and receipt for it in settlement of their obligations for that period. For the rent thereafter accruing they have shown nothing to connect the owners with such waiver except the inference growing out of their silent acceptance of the later remittances from Blankenship.   This, however, is not sufficient under the statute.   That the owners expressly accepted the $30.00 per month in satisfaction of the amount actually due, $75.00 per month, must be proved, for that requirement is imposed by statute, and without such proof the tenants cannot claim extinguishment of their debt.

This conclusion makes it unnecessary to consider any of the other questions which are raised.   The case has been fully developed.   It is shown that at the time the distress warrant was issued the amount due was rent for seven months at the rate of $75.00 per month from October, 1921, to April, 1922, inclusive, as fixed by the lease.   This aggregates the sum of $525.00.   Upon this sum, giving due respect to the verdict of the jury and the testimony of one of the tenants that $30.00 of the rent for April, 1922, had also been paid to Blankenship, they are entitled to credit for seven months at the rate of $30.00 per month, making $210.00, which leaves a balance of $315.00 due.   The trial court should have set aside the verdict and entered judgment against the

tenants for this amount.    Such a judgment will be entered here and as the property levied on under the distress warrant is subject to a lien therefor, the case is remanded to the trial court for such further proceedings as may be necessary to conclude the proceedings.

*Reversed and remanded.*